IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CICI ENTERPRISES, LP and YES CAPS, LLC,**<br><br>　　　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**MUCHO PIZZA, LLC, SUN HOLDINGS, INC., and GUILLERMO PERALES,**<br><br>　　　　　**Defendants.** | Case No.: |

## COMPLAINT

Plaintiffs CiCi Enterprises, LP ("CiCi Enterprises") and Yes Caps, LLC ("Yes Caps" and together with CiCi Enterprises, "Cicis"), by their attorneys and for their Complaint against Mucho Pizza, LLC, Sun Holdings, Inc., and Guillermo Perales, allege and state as follows:

## INTRODUCTION

1. Defendants Mucho Pizza, LLC and Guillermo Perales are the current franchisee and personal guarantor of 17 franchised Cicis®-brand restaurants located in Texas, which they operate under written franchise agreements with Cicis. As authorized franchisees, defendants have access to Cicis' trade secrets and confidential information regarding Cicis proprietary system for the development and operation of franchised pizza restaurants. Under the franchise agreements, defendants have agreed to strictly maintain the confidentiality of Cicis' trade secrets and confidential information and not to directly or indirectly participate in the ownership or operation of any competitive pizza restaurant during the term of (and for a limited period after) the franchise agreements.

2. Recently, however, defendants, through their affiliate Sun Holdings Inc. or one of its subsidiaries, signed a development deal with a competitive pizza restaurant franchisor and, upon information and belief, have begun acquiring franchised pizza restaurants under that competitive brand.

3. This conduct violates federal and state trade secret law and breaches the confidentiality and in-term noncompetition covenants in defendants' franchise agreements with Cicis.

## PARTIES

4. CiCi Enterprises is a Delaware limited partnership with its principal place of business in Dallas, Texas.

5. Yes Caps is a Delaware limited liability company with its principal place of business in Dallas, Texas.

6. Defendant Mucho Pizza, LLC ("Mucho") is a Texas limited liability company with its principal place of business in Dallas, Texas.

7. Defendant Sun Holdings, Inc. ("Sun Holdings") is a Texas corporation with its principal place of business in Dallas, Texas.

8. Defendant Guillermo Perales ("Perales") is a Texas citizen and resident. Perales is the owner and controlling principal of Sun Holdings. Perales and/or Sun Holdings also own and control Mucho.

## JURISDICTION AND VENUE

9. The Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1367 because claims in the lawsuit arise out of the laws of the United States and the

remaining claims are so related to claims within such original jurisdiction that they form part of the same case or controversy.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(1) and (2) because defendants reside, and a substantial part of the events or omissions giving rise to the claims asserted in this action occurred, in this judicial district.

11. Jurisdiction and venue are also proper in this judicial district because defendants expressly agreed in writing in the franchise agreements and personal guaranties that any action between the parties would be brought exclusively in this Court, and they irrevocably consented to, and waived any objection to, jurisdiction of and venue in this Court.

## RELEVANT FACTS

### The Cicis® System

12. CiCi Enterprises is the national franchisor of more than 300 Cicis®-brand restaurants operating under franchise agreements entered into before April 2021. Cicis®-brand restaurants offer pizza and other food products and beverages for dine-in, carry-out, and delivery.

13. CiCi Enterprises grants franchises to certain persons who satisfy its internal criteria to establish and operate Cicis®-brand restaurants under written franchise agreements with Cicis, together with a limited license to use certain Cicis' trademarks in connection therewith.

14. Yes Caps owns those trademarks and certain intellectual property, including copyrights, trade secrets, trade dress, and other proprietary information used in the development and operation of restaurants and food facilities that operate under and provide products and services identified by those trademarks.

15. Yes Caps licenses that intellectual property to CiCi Enterprises, which in turn sublicenses it to authorized Cicis franchisees for use solely in connection with their operation of Cicis®-brand restaurants pursuant to written franchise agreements with Cicis.

16. Cicis franchisees, including defendants, have access to, and agree to maintain the confidentiality of, Cicis' pricing and promotional information, marketing materials and strategies, business and operations manuals and procedures, financial information, strategic marketing research, sales techniques, business methods, and other confidential and proprietary information ("Trade Secrets and Confidential Information").

17. Cicis' Trade Secrets and Confidential Information are not generally known in the industry, and Cicis derives economic value and a competitive advantage in the marketplace from their secrecy.

18. Cicis has invested substantial sums of money and time researching and developing the Cicis' Trade Secrets and Confidential Information.

19. Cicis maintains the confidentiality of its Trade Secrets and Confidential Information by disclosing such information to authorized franchisees under written franchise agreements with confidentiality obligations; restricting access on a need-to-know basis; and storing the information on password protected computer and network platforms.

20. Cicis also protects access to its Trade Secrets and Confidential Information by requiring authorized franchisees to agree to reasonable in-term and post-term noncompetition covenants that prohibit franchisees from having a direct or indirect interest in competitive restaurants that similarly sell pizza.

**Defendants' Cicis® Franchises**

21. Mucho is the largest franchisee in the Cicis network. It has owned and operated no fewer than 45 restaurants since becoming a Cicis franchisee.

22. Currently, CiCi Enterprises, as franchisor, and Mucho, as franchisee, are parties to 17 written franchise agreements ("Franchise Agreements"), under which Mucho owns and operates authorized Cicis®-brand restaurants for the following locations:

- Franchise agreement dated June 9, 2010, for restaurant number 261, located at 750 Gulfgate Center Mall, Houston, TX 77087;

- Franchise agreement dated November 9, 2011, for restaurant number 358, located at 10822 North Freeway, Houston, TX 77037;

- Franchise agreement dated November 9, 2011, for restaurant number 389, located at 23741 Highway 59 N, Porter, TX 77365;

- Franchise agreement dated December 15, 2011, for restaurant number 199, located at 7438 Spencer Highway, Suite A, Pasadena, TX 77505;

- Franchise agreement dated July 12, 2012, for restaurant number 363, located at 7441 West Tidwell, Houston, TX 77040;

- Franchise agreement between dated July 8, 2014, for restaurant number 43, located at 6182 Highway 6 North, Houston, TX 77084;

- Franchise agreement between dated July 8, 2014, for restaurant number 59, located at 3053 S. John Redditt Drive, Lufkin, TX 75904;

- Franchise agreement dated July 8, 2014, for restaurant number 75, located at 315 Sawdust Road, Spring, TX 77380;

- Franchise agreement dated July 8, 2014, for restaurant number 80, located at 11227 Fuqua Street, Houston, TX 77089;

- Franchise agreement dated July 8, 2014, for restaurant number 449, located at 11803 Wilcrest Drive, Houston, TX 77031;

- Franchise agreement dated July 8, 2014, for restaurant number 548, located at 1635 Broadway Street, Suite 101, Pearland, TX 77581;

- Franchise agreement dated December 17, 2015, for restaurant number 616, located at 111 FM 1960 Road W., Houston, TX 77090;

- Franchise agreement dated July 18, 2016, for restaurant number 123, located at 1134 W. Dallas Street, Conroe, TX 77301;

- Franchise agreement dated July 18, 2016, for restaurant number 126, located at 5901 Bellaire Boulevard, Houston, TX 77081;

- Franchise agreement dated July 18, 2016, for restaurant number 127, located at 4508 Garth Road, Suite G, Baytown, TX 77521;

- Franchise agreement dated July 18, 2016, for restaurant number 133, located at 4400 North Freeway, Suite 300-A, Houston, TX 77022; and

- Franchise agreement dated July 18, 2016, for restaurant number 142, located at 19705 Highway 59 N, Humble, TX 77338.

23.  The Franchise Agreements contain the same or substantially similar terms.

24.  Defendant Perales personally guaranteed Mucho's obligations under the Franchise Agreements, and agreed to be personally bound by, and personally liable for the breach of, each and every provision of the Franchise Agreements, including the confidentiality and noncompetition covenants ("Guaranties").

25. Under the Franchise Agreements, defendants received a limited license to use Cicis' proprietary system (including the Trade Secrets and Confidential Information) and trademarks in connection with their operation of the restaurants.

26. In exchange, defendants agreed, among other things, to pay Cicis a continuing royalty fee based on a percentage of the restaurants' net sales, varying incrementally from four to six percent depending on volume, for the full term of the Franchise Agreements.

27. Defendants also agreed not to communicate, divulge, or use for the benefit of any other party any of the Trade Secrets and Confidential Information received under the Franchise Agreements or in their operation of their Cicis®-brand franchised restaurants.

28. Indeed, defendants expressly acknowledged in the Franchise Agreements that the training and Trade Secrets and Confidential Information they receive from Cicis is beyond their skills and experience; provides them a competitive advantage; and was a primary reason for entering into the Franchise Agreements.

29. Defendants further agreed to a reasonably limited in-term and post-term noncompetition covenant that prohibits them from directly or indirectly owning, maintaining, operating, engaging in, being employed by, or having any financial or beneficial interest, advising, assisting, aiding, making loans to, or otherwise supporting any business in a territory in which Cicis operates, or licenses others to operate, and that derives more than fifty percent of its revenue from selling pizza (including dine-in, carry out, and catering), during the respective terms of the Franchise Agreements and for two years after termination, expiration, or transfer of defendants' interest in the Franchise Agreements.

30. The Franchise Agreements also require defendants to pay Cicis all damages, costs, and expenses, including reasonable attorneys' fees, incurred by Cicis in connection with obtaining relief for any breach of the Franchise Agreements.

**Defendants' Misappropriation of Cicis' Trade Secrets and Confidential Information and Breaches of the Confidentiality and Noncompetition Covenants**

31. Despite these obligations, defendants, through their affiliate Sun Holdings or one of its subsidiaries, recently entered into a development agreement with a competing nationally-recognized franchised pizza restaurant brand ("Competitive Brand").

32. Upon information and belief, the development agreement contemplates defendants opening 100 units in Texas under the Competitive Brand by 2029.

33. Upon information and belief, defendants have already acquired 19 franchised pizza restaurants under the Competitive Brand in Texas. On social media, in press releases, and in press interviews, Perales and Sun Holdings have publicly touted the development deal with the Competitive Brand and acquisition of 19 franchised restaurants.

34. Given that defendants expressly acknowledged in the Franchise Agreements that the training and proprietary system provided over the years to them by Cicis exceeded their skills and experience before entering into those agreements, it is inevitable that they will use such knowledge—including Cicis' Trade Secrets and Confidential Information—in connection with their operation of the restaurants under the Competitive Brand.

35. What's worse, under the Franchise Agreements, Cicis must continue to provide defendants access to its Trade Secrets and Confidential Information throughout the remaining terms of the Franchise Agreements—further ensuring that such information will be used against Cicis in the operation of the restaurants under the Competitive Brand.

36. For example, as authorized Cicis franchisees, defendants have access to sales performance data of all other Cicis restaurants, including those within the State of Texas. This information would be particularly valuable to anyone seeking to develop franchised pizza restaurants under a competitive brand as it allows that developer to: (i) identify successful markets; and (ii) target and attempt to drive underperforming Cicis franchisees out of business.

37. In addition, Cicis franchisees attend weekly town hall meetings where Cicis discloses, among other things, confidential future marketing initiatives and promotional offers. This information similarly is particularly valuable to anyone seeking to develop and operate franchised restaurants under a competitive brand as it allows that competitor to timely prepare its own initiatives to compete with Cicis.

38. Not to mention, authorized Cicis franchisees have access to Cicis Connect—an online, password-protected portal containing highly confidential financial performance information, operations manuals, training materials, supplier contacts, pricing, and numerous other components of Cicis' Trade Secrets and Confidential Information.

39. Defendants' ownership and operation of the Competitive Brand restaurants also violates the Franchise Agreements' in-term noncompetition covenants, as each of the Competitive Brand restaurants opened by defendants and their affiliates is or will be a business that derives more than fifty percent of its revenue from selling pizza.

40. Cicis sent defendants a letter notifying them that they were in default of the Franchise Agreements' in-term noncompetition covenants as a result of the development deal under the Competitive Brand.

9

41. Defendants, in response, conceded that their acquisition of the restaurants under the Competitive Brand violates the Franchise Agreements' in-term noncompetition covenants as written.

42. They argue instead that the parties agreed to modify the noncompetition covenants to allow for them to engage with the Competitive Brand.

43. That proposal from 2018, however, was conditional on defendants satisfying certain conditions relating to reimaging, renewing, and developing existing or new units.

44. Because defendants failed to meet those conditions, the proposed modification to the noncompetition covenant was never agreed to.

45. Defendants, however, still refuse to cure the defaults relating to the development deal under the Competitive Brand.

46. Cicis at all times fully performed all of its obligations under the Franchise Agreements.

## COUNT I
## VIOLATION OF DEFEND TRADE SECRETS ACT

47. Cicis incorporates the above paragraphs as if fully stated in this paragraph.

48. Cicis' Trade Secrets and Confidential Information constitute trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3).

49. Cicis' Trade Secrets and Confidential Information are related to products offered at its franchised restaurants and by its franchised system, which are used and intended for use in interstate commerce within the meaning of the DTSA, 18 U.S.C. § 1836(b)(1).

50. Cicis' Trade Secrets and Confidential Information generate both actual and potential economic benefits and value, are not generally known to other persons or the public at large, and are not readily ascertainable by other persons by proper means.

51. Cicis has taken reasonable steps and has made reasonable efforts to maintain the secrecy and confidentiality of its Trade Secrets and Confidential Information, including, but not limited to, requiring its franchisees to agree to maintain the confidentiality of this information.

52. Defendants' actions constitute unlawful, willful, and malicious misappropriation of Cicis' Trade Secrets and Confidential Information in violation of the DTSA, in that defendants have used and disclosed, or threatened to use and disclose, the Trade Secrets and Confidential Information in the operation of the competitive franchised restaurants, with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy.

53. Under 18 U.S.C. § 1836(b)(3)(A)(i)-(ii), the Court may issue injunctive relief to prevent any actual or threatened trade secret misappropriation and requiring affirmative acts to protect trade secrets.

54. Cicis is entitled to injunctive relief ordering defendants to cease misappropriating Cicis' Trade Secrets and Confidential Information. Defendants actions are causing Cicis to suffer, and unless enjoined will continue to cause Cicis to suffer, irreparable harm for which Cicis has no adequate remedy at law. Unless defendants are ordered to cease their misappropriation, defendants will continue to violate their contractual obligations and Cicis' Trade Secrets and Confidential Information will remain at risk of mishandling, misuse, and disclosure.

55. Under 18 U.S.C. § 1836(b)(3)(B)-(C), Cicis is also entitled to damages caused by defendants' misappropriation of its trade secrets, and because defendants' misappropriation was willful and malicious, to an award of exemplary damages in an amount equal to two times actual damages.

## COUNT II
## TRADE SECRET MISAPPROPRIATION

56. Cicis incorporates the above paragraphs as if fully stated in this paragraph.

57. Cicis' Trade Secrets and Confidential Information constitute trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.002(6).

58. Cicis' Trade Secrets and Confidential Information generate both actual and potential economic benefits and value, are not generally known to other persons or the public at large, and are not readily ascertainable by other persons by proper means.

59. Cicis' has taken reasonable steps and has made reasonable efforts to maintain the secrecy and confidentiality of its Trade Secrets and Confidential Information, including, but not limited to, requiring its franchisees to agree to maintain the confidentiality of this information.

60. Defendants' actions constitute unlawful, willful, and malicious misappropriation of Cicis' trade secrets in violation of the TUTSA, in that defendants used and disclosed, or threatened to use and disclose, the Trade Secrets and Confidential Information in the operation of the competitive franchised restaurants, with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy.

61. Under Tex. Civ. Prac. & Rem. Code § 134A.003(a) and (c), the Court may issue injunctive relief to prevent any actual or threatened trade secret misappropriation and requiring affirmative acts to protect trade secrets.

62. Cicis is entitled to injunctive relief ordering defendants to cease misappropriating Cicis' Trade Secrets and Confidential Information. Defendants actions is causing Cicis to suffer, and unless enjoined will continue to cause Cicis to suffer, irreparable harm for which Cicis has no adequate remedy at law. Unless defendants are ordered to cease their misappropriation, defendants will continue to violate their contractual obligations and Cicis' Trade Secrets and Confidential Information will remain at risk of mishandling, misuse, and disclosure.

63. Under Tex. Civ. Prac. & Rem. Code § 134A.004(a)-(b), Cicis is also entitled to damages caused by defendants' misappropriation of its trade secrets, and because defendants' misappropriation was willful and malicious, to an award of exemplary damages in an amount equal to two times actual damages.

## COUNT III
## BREACH OF CONTRACT – SPECIFIC PERFORMANCE

64. Cicis incorporates the above paragraphs as if fully stated in this paragraph.

65. Defendants' actions constitute material breaches of the Franchise Agreements and Guaranties, including, without limitation, the confidentiality and noncompetition covenants.

66. As a direct and proximate result of defendants' continuing breaches, Cicis has suffered and will continue to suffer actual, substantial, and irreparable harm, including but not limited to, loss of customer goodwill and loyalty, franchise system instability, lost profits, diminution in the value of its proprietary and confidential information, and loss of competitive advantage.

67. Additionally, defendants' breaches have caused and will continue to cause harm to Cicis' authorized franchisees, against whom defendants are, or will be, competing under the Competitive Brand, which causes further irreparable harm to the overall growth of the Cicis franchise network.

68. Further, Cicis has been and will be irreparably harmed by defendants' actions, and monetary damages are an insufficient remedy in that they cannot fully and adequately compensate Cicis for the continuing damage to the value of Cicis' goodwill and reputation, its proprietary and confidential information, and its system stability, all of which are caused by defendants' continuing material breaches.

69. Absent injunctive relief enjoining their misconduct and ordering specific performance of their noncompetition covenants, defendants' material breaches will continue to cause Cicis irreparable harm.

## COUNT IV
## BREACH OF CONTRACT – DAMAGES

70. Cicis incorporates and realleges ¶¶ 1-63 of the Complaint as and for ¶ 70 of this Count IV as if fully set forth herein.

71. Cicis pleads this Count IV in the alternative and without prejudice to Count III above.

72. Defendants' actions constitute material breaches of the Franchise Agreements and Guaranties, including, without limitation, the confidentiality and noncompetition covenants.

73. As a direct and proximate result of these breaches, Cicis has been damaged in an amount to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Cicis respectfully prays for judgment in its favor and against defendants Mucho, Sun Holdings, and Perales, jointly and severally, for the following relief:

A. Preliminary and permanent injunctive relief enjoining further misappropriation of Cicis' Trade Secrets and Confidential Information;

B. Preliminary and permanent injunctive relief enjoining defendants' continuing violations of the Franchise Agreements' noncompetition covenants and confidentiality provisions, or in the alternative, damages in an amount to be proved at trial for such violations;

C. Damages for the willful misappropriation of Cicis' Trade Secrets and Confidential Information under both the DTSA, 18 U.S.C. § 1836(b)(3)(B)-(C), and TUTSA, Tex. Civ. Prac. & Rem. Code § 134A.004(a)-(b) in an amount to be proved at trial;

D. An award of its costs and expenses, including attorneys' fees, incurred in connection with this action; and

E. Such other relief as this Court deems just and proper.

Dated: January 6, 2022

Respectfully submitted,

/s/ *J. David Apple*
J. David Apple
APPLE & FINK, LLP
735 Plaza Blvd., Suite 200
Coppell, Texas 75019
(972) 315-1900 x223
(972) 315-1955 fax
jdapple@applefinklaw.com

-and-

/s/ *Aaron-Michael Sapp*
Aaron-Michael Sapp (*pro hac forthcoming*)
Charles J. Hoover (*pro hac forthcoming*)
CHENG COHEN LLC
363 West Erie Street, Suite 500
Chicago, Illinois 60654
asapp@chengcohen.com
charles.hoover@chengcohen.com