IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CICI ENTERPRISES, LP and YES CAPS, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**MUCHO PIZZA, LLC, SUN HOLDINGS, INC., PAPA TEXAS, LLC, and GUILLERMO PERALES,**<br><br>Defendants. | Case No.: 3:22-cv-00033-M |

## SECOND AMENDED COMPLAINT

Plaintiffs CiCi Enterprises, LP ("CiCi Enterprises") and Yes Caps, LLC ("Yes Caps," and together with CiCi Enterprises, "Cicis"), by their attorneys and for their Second Amended Complaint against Mucho Pizza, LLC ("Mucho"), Sun Holdings, Inc. ("Sun Holdings"), Papa Texas, LLC ("Papa Texas"), and Guillermo Perales ("Perales"), allege and state as follows:

### INTRODUCTION

1.   Defendants Mucho and Perales are the now-former franchisee and personal guarantor of 17 franchised Cicis®-brand restaurants located in Texas, which they operated under written franchise agreements with Cicis. As authorized franchisees, defendants had access to Cicis' trade secrets and confidential information regarding Cicis' proprietary system for the development and operation of franchised pizza restaurants. Under the franchise agreements, defendants Mucho and Perales agreed to strictly maintain the confidentiality of Cicis' trade secrets and confidential information and not to directly or indirectly participate in the ownership

or operation of any competitive pizza restaurant both during the term of, and for a limited period after, the franchise agreements' terms.

2.  Recently, however, defendants Perales and Sun Holdings, through their affiliate Papa Texas, signed a development deal with a competitive pizza restaurant franchisor and have begun acquiring existing, and rapidly developing new, franchised pizza restaurants under that competitive brand using Cici's trade secrets and confidential information.

3.  This conduct violates federal and state trade secret law and breaches the confidentiality and in-term noncompetition covenants in defendants' franchise agreements with Cicis.

4.  After the Court denied defendants' motion to dismiss the trade secret claims set forth in Cicis' first amended complaint, Mucho and Perales transferred all of their Cicis franchises to a third party. Their continued ownership and operation of those competitive franchised pizza restaurants within ten miles of other Cicis restaurants now violates the post-termination noncompetition covenants in their franchise agreements with Cicis.

## PARTIES

5.  CiCi Enterprises is a Delaware limited partnership with its principal place of business in Dallas, Texas.

6.  Yes Caps is a Delaware limited liability company with its principal place of business in Dallas, Texas.

7.  Defendant Mucho is a Texas limited liability company with its principal place of business in Dallas, Texas.

8.  Defendant Sun Holdings is a Texas corporation with its principal place of business in Dallas, Texas.

9. Defendant Papa Texas is a Texas limited liability company with its principal place of business in Dallas, Texas.

10. Defendant Perales is a Texas citizen and resident. Perales is the owner and controlling principal of Sun Holdings. Perales and/or Sun Holdings also own and control Mucho and Papa Texas.

## JURISDICTION AND VENUE

11. The Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1367 because claims in the lawsuit arise out of the laws of the United States and the remaining claims are so related to claims within such original jurisdiction that they form part of the same case or controversy.

12. Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(1) and (2) because defendants reside, and a substantial part of the events or omissions giving rise to the claims asserted in this action occurred, in this judicial district.

13. Jurisdiction and venue are also proper in this judicial district because defendants expressly agreed in writing in the franchise agreements and personal guaranties that any action between the parties would be brought exclusively in this Court, and they irrevocably consented to, and waived any objection to, jurisdiction of and venue in this Court.

## RELEVANT FACTS

### The Cicis® System

14. CiCi Enterprises is the national franchisor of more than 300 Cicis®-brand restaurants operating under franchise agreements entered into before April 2021. Cicis®-brand restaurants offer pizza and other food products and beverages for dine-in, carry-out, and delivery.

3

15. CiCi Enterprises grants franchises to certain persons who satisfy its internal criteria to establish and operate Cicis®-brand restaurants under written franchise agreements with Cicis, together with a limited license to use certain of Cicis' trademarks in connection therewith.

16. Yes Caps owns those trademarks and certain intellectual property, including copyrights, trade secrets, trade dress, and other proprietary information used in the development and operation of restaurants and food facilities that operate under and provide products and services identified by those trademarks.

17. Yes Caps licenses that intellectual property to CiCi Enterprises, which in turn sublicenses it to authorized Cicis franchisees for use solely in connection with their operation of Cicis®-brand restaurants pursuant to written franchise agreements with Cicis.

18. Cicis franchisees, including defendants, have access to, and agree to maintain the confidentiality of, Cicis' pricing and promotional information, marketing materials and strategies, business and operations manuals and procedures, financial information, strategic marketing research, sales techniques, business methods, and other confidential and proprietary information ("Trade Secrets and Confidential Information").

19. Cicis' Trade Secrets and Confidential Information are not generally known in the industry, and Cicis derives economic value and a competitive advantage in the marketplace from their secrecy.

20. Cicis has invested substantial sums of money and time researching and developing its Trade Secrets and Confidential Information.

21. Cicis maintains the confidentiality of its Trade Secrets and Confidential Information by disclosing such information to authorized franchisees under written franchise

agreements with confidentiality obligations; restricting access on a need-to-know basis; and storing the information on password protected computer and network platforms.

22. Cicis also protects access to its Trade Secrets and Confidential Information by requiring authorized franchisees to agree to reasonable in-term and post-termination noncompetition covenants that prohibit franchisees from having a direct or indirect interest in competitive restaurants that similarly sell pizza.

23. During their time as Cicis franchisees, Mucho and Perales had access to Cicis' Trade Secrets and Confidential Information and agreed to maintain the confidentiality of this information.

### Defendants' Cicis® Franchises

24. Before the recent transfer described above, Mucho was the largest franchisee in the Cicis network. It has owned and operated no fewer than 45 restaurants since becoming a Cicis franchisee.

25. Before the transfer, CiCi Enterprises, as franchisor, and Mucho, as franchisee, were parties to 17 written franchise agreements ("Franchise Agreements"), under which Mucho owned and operated authorized Cicis®-brand restaurants for the following locations:

- Franchise agreement dated June 9, 2010, for restaurant number 261, located at 750 Gulfgate Center Mall, Houston, TX 77087;

- Franchise agreement dated November 9, 2011, for restaurant number 358, located at 10822 North Freeway, Houston, TX 77037;

- Franchise agreement dated November 9, 2011, for restaurant number 389, located at 23741 Highway 59 N, Porter, TX 77365;

5

- Franchise agreement dated December 15, 2011, for restaurant number 199, located at 7438 Spencer Highway, Suite A, Pasadena, TX 77505;

- Franchise agreement dated July 12, 2012, for restaurant number 363, located at 7441 West Tidwell, Houston, TX 77040;

- Franchise agreement between dated July 8, 2014, for restaurant number 43, located at 6182 Highway 6 North, Houston, TX 77084;

- Franchise agreement between dated July 8, 2014, for restaurant number 59, located at 3053 S. John Redditt Drive, Lufkin, TX 75904;

- Franchise agreement dated July 8, 2014, for restaurant number 75, located at 315 Sawdust Road, Spring, TX 77380;

- Franchise agreement dated July 8, 2014, for restaurant number 80, located at 11227 Fuqua Street, Houston, TX 77089;

- Franchise agreement dated July 8, 2014, for restaurant number 449, located at 11803 Wilcrest Drive, Houston, TX 77031;

- Franchise agreement dated July 8, 2014, for restaurant number 548, located at 1635 Broadway Street, Suite 101, Pearland, TX 77581;

- Franchise agreement dated December 17, 2015, for restaurant number 616, located at 111 FM 1960 Road W., Houston, TX 77090;

- Franchise agreement dated July 18, 2016, for restaurant number 123, located at 1134 W. Dallas Street, Conroe, TX 77301;

- Franchise agreement dated July 18, 2016, for restaurant number 126, located at 5901 Bellaire Boulevard, Houston, TX 77081;

- Franchise agreement dated July 18, 2016, for restaurant number 127, located at 4508 Garth Road, Suite G, Baytown, TX 77521;

- Franchise agreement dated July 18, 2016, for restaurant number 133, located at 4400 North Freeway, Suite 300-A, Houston, TX 77022; and

- Franchise agreement dated July 18, 2016, for restaurant number 142, located at 19705 Highway 59 N, Humble, TX 77338.

26. The Franchise Agreements contain the same or substantially similar terms.

27. Defendant Perales personally guaranteed Mucho's obligations under the Franchise Agreements, and agreed to be personally bound by, and personally liable for the breach of, each and every provision of the Franchise Agreements, including the confidentiality and noncompetition covenants ("Guaranties").

28. Under the Franchise Agreements, defendants received a limited license to use Cicis' proprietary system (including the Trade Secrets and Confidential Information) and trademarks in connection with their operation of the restaurants.

29. In exchange, defendants agreed, among other things, to pay Cicis a continuing royalty fee based on a percentage of the restaurants' net sales, varying incrementally from four to six percent depending on volume, for the full term of the Franchise Agreements.

30. Defendants also agreed not to communicate, divulge, or use for the benefit of any other party any of the Trade Secrets and Confidential Information received under the Franchise Agreements or in their operation of their Cicis®-brand franchised restaurants.

31. Indeed, defendants expressly acknowledged in the Franchise Agreements that the training and Trade Secrets and Confidential Information they received from Cicis is beyond their

skills and experience; provided them a competitive advantage; and was a primary reason for entering into the Franchise Agreements.

32. Defendants further agreed to reasonably limited in-term and post-termination noncompetition covenants that prohibit them from directly or indirectly owning, maintaining, operating, engaging in, being employed by, or having any financial or beneficial interest, advising, assisting, aiding, making loans to, or otherwise supporting any business in a territory in which Cicis operates, or licenses others to operate, and that derives more than fifty percent of its revenue from selling pizza (including dine-in, carry out, and catering) both (i) during the respective terms of the Franchise Agreements, and (ii) within 10 miles of any other Cicis restaurant for two years after termination, expiration, or transfer of defendants' interest in the Franchise Agreements.

33. The Franchise Agreements also required defendants to pay Cicis all damages, costs, and expenses, including reasonable attorneys' fees, incurred by Cicis in connection with obtaining relief for any breach of the Franchise Agreements.

**Defendants' Misappropriation of Cicis' Trade Secrets and Confidential Information and Breaches of the Confidentiality and Noncompetition Covenants**

34. Despite these obligations—and unknown to Cicis at the time—defendants began competing with Cicis during the terms of the Franchise Agreements by developing and opening their own franchised restaurants under, and acquiring existing open and operating franchised restaurants from other franchisees of, a competing nationally-recognized franchised pizza restaurant brand, Papa John's Franchising, LLC ("Papa John's") in early 2021.

35. Cicis recently discovered that on May 20, 2021, Perales formed Papa Texas.

36. Cicis also recently discovered that from May 20, 2021 through December 31, 2021, Papa Texas acquired 69 Papa John's restaurants from prior franchisee owners of those restaurants.

37. To put that number in perspective, a total of 113 franchised restaurants were transferred within the entire Papa John's franchise system during all of 2021. Papa Texas acquired more than half of them.

38. Cicis, of course, did not—and could not—discover any of this information until March 2022, when Papa John's issued its federally-mandated and publicly available franchise disclosure documents ("FDD"). Even then, Cicis had to scour the list of existing franchisees, identify any franchisee entities that did not appear in Papa John's prior year FDD, and obtain the formation documents for those franchisee entities. Only then did Cicis discover that Perales had formed Papa Texas and has been acquiring operating restaurants under Papa John's through Papa Texas.

39. Now that the FDD is public, however, defendants have leaned into publicly touting their newly-formed relationship with Papa John's.

40. On March 30, 2022, Perales spoke at a conference for multi-unit franchisee owners where he identified himself as a franchisee owner under both Cicis and Papa John's.

41. On March 31, 2022, an article in QSR Magazine profiled defendant Sun Holdings' recently announced agreement to acquire another 90 Texas-based restaurants under Papa John's. This deal, the article explained, is in addition to the development deal entered into between Sun Holdings and Papa John's to open 100 new restaurants in Texas by 2029.

9

42. On April 1, 2022, the Franchise Times published an article confirming that Sun Holdings is "aggressively growing" its locations under Papa John's by both buying existing locations and building rapidly.

43. In that same article, Perales stated that he really liked "what the [Papa John's] brand has done to position itself *against other brands*" (emphasis added).

44. Put simply, unknown to Cicis until very recently, Perales, through Sun Holdings and Papa Texas, acquired 69 restaurants under Papa John's in 2021 alone; recently acquired another 90 in Texas; and agreed to develop another 100 in Texas by 2029. According to Sun Holding's website, Perales, Sun Holdings, and Papa Texas currently own and operate 167 Papa John's restaurants.

45. What's worse, Cicis' analysis of the Texas-based franchised restaurants already acquired by defendants confirms its suspicion that Perales, Mucho, Papa Texas, and Sun Holdings have used Cicis' Trade Secrets and Confidential Information to unlawfully compete with Cicis.

46. Cicis' Trade Secrets and Confidential Information are available to its franchisees via Cicis Connect, an online, password-protected portal containing highly confidential financial performance information, operations manuals, training materials, supplier contacts, pricing, and numerous other components of Cicis' Trade Secrets and Confidential Information.

47. As authorized Cicis franchisees, defendants Mucho and Perales had access to Cicis Connect when Perales and Sun Holdings formed defendant Papa Texas in 2021 and began acquiring restaurants under Papa John's.

48. The sales and financial performance information available to Mucho and Perales through Cicis Connect is particularly valuable to anyone seeking to develop and operate

10

franchised pizza restaurants under a competitive brand as it allows that developer to: (i) identify successful markets; (ii) target and attempt to drive underperforming Cicis franchisees out of business; and (iii) plan marketing activities to combat the marketing efforts planned by Cicis franchisees.

49. Based on the publicly available information of franchised restaurants defendants own under Papa John's, Perales, Mucho, Papa Texas, and Sun Holdings improperly acquired, disclosed, and used Cicis' Trade Secrets and Confidential Information in precisely this way to compete against Cicis.

50. For example, 27 of the 31 Texas-based franchised restaurants defendants have acquired under Papa John's are within 10 miles of existing Cicis restaurants. Twenty are within 5 miles. Thirteen are within 3 miles, including at least one that is 0.2 miles from a Cicis restaurant.

51. Given the size of the Texas market and the number of units defendants have acquired under Papa John's, it cannot be a coincidence that defendants happened to acquire so many franchised restaurants under Papa John's in such close proximity to existing Cicis franchised restaurants.

52. Rather, upon information and belief, defendant Perales improperly accessed Cicis' Trade Secrets and Confidential Information through Mucho for the purpose of sharing that information with his other entities, Sun Holdings and Papa Texas, to assist them with identifying and acquiring restaurants under Papa John's.

53. Defendants' misappropriation of Cicis' Trade Secrets and Confidential Information does not stop there. Given that Mucho and Perales expressly acknowledged in the Franchise Agreements that the training and proprietary system provided over the years to them by Cicis exceeded their skills and experience before entering into those agreements, it is

11

inevitable that they will use such knowledge—including Cicis' Trade Secrets and Confidential Information—to assist Sun Holdings and Papa Texas compete with Cicis in connection with their operation of the restaurants under Papa John's.

54. In addition, Cicis franchisees attend weekly town hall meetings where Cicis discloses, among other things, confidential future marketing initiatives and promotional offers. This information similarly is particularly valuable to anyone seeking to develop and operate franchised restaurants under a competitive brand as it allows that competitor to timely prepare its own initiatives to compete with Cicis.

55. Cicis' investigation into the marketing initiatives and promotional offers made by the newly discovered restaurants that defendants operate under Papa John's is ongoing.

56. Lastly, under the Franchise Agreements, Cicis was required to continue providing Mucho and Perales access to its Trade Secrets and Confidential Information throughout the time in which Perales, through Sun Holdings and Papa Texas, acquired and developed competitive Papa John's restaurants.

57. Defendants' ownership and operation of Papa John's restaurants during the term of the Franchise Agreements also violated the Franchise Agreements' in-term noncompetition covenants, as each of the Papa John's restaurants opened by defendants and their affiliates is or will be a business that derives more than fifty percent of its revenue from selling pizza.

58. Cicis sent defendants a letter notifying them that they were in default of the Franchise Agreements' in-term noncompetition covenants as a result of the development deal under Papa John's.

59. Defendants, in response, conceded that their acquisition of the restaurants under Papa John's violates the Franchise Agreements' in-term noncompetition covenants as written.

60. They argued instead that the parties agreed to modify the noncompetition covenants to allow for them to engage with Papa John's.

61. That proposal from 2018, however, was contingent on defendants satisfying certain conditions relating to reimaging, renewing, and developing existing or new units.

62. Because defendants failed to meet those conditions, the proposed modification to the noncompetition covenants was never agreed to.

63. Defendants, however, still refused to cure the defaults relating to the development deal under Papa John's.

64. After the Court ruled on defendants' motion to dismiss the first amended complaint [Dkt. 38], Mucho and Perales sold their existing Cicis restaurants to a third-party buyer.

65. In connection with the transfer of their Cicis restaurants, defendants agreed to release Cicis and other related parties from any and all claims. Additionally, once Mucho and Perales transferred all of their interest in the Cicis franchises and Franchise Agreements, defendants' respective direct and indirect ownership and operation of those Papa John's restaurants within 10 miles of any Cicis restaurants through Sun Holdings and Papa Texas became a continuing violation of the post-termination noncompetition covenants in the Franchise Agreements.

66. Cicis at all times fully performed all of its obligations under the Franchise Agreements.

## COUNT I
## VIOLATION OF DEFEND TRADE SECRETS ACT (Against All Defendants)

67. Cicis incorporates the above paragraphs as if fully stated in this paragraph.

68. Cicis' Trade Secrets and Confidential Information constitute trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3).

69. Cicis' Trade Secrets and Confidential Information are related to products offered at its franchised restaurants and by its franchised system, which are used and intended for use in interstate commerce within the meaning of the DTSA, 18 U.S.C. § 1836(b)(1).

70. Cicis' Trade Secrets and Confidential Information generate both actual and potential economic benefits and value, are not generally known to other persons or the public at large, and are not readily ascertainable by other persons by proper means.

71. Cicis has taken reasonable steps and has made reasonable efforts to maintain the secrecy and confidentiality of its Trade Secrets and Confidential Information, including, but not limited to, requiring its franchisees to agree to maintain the confidentiality of this information.

72. Defendants' actions constitute unlawful, willful, and malicious misappropriation of Cicis' Trade Secrets and Confidential Information in violation of the DTSA, in that defendants have used and disclosed, or threatened to use and disclose, the Trade Secrets and Confidential Information in the operation of the competitive franchised restaurants, with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy.

73. Under 18 U.S.C. § 1836(b)(3)(A)(i)-(ii), the Court may issue injunctive relief to prevent any actual or threatened trade secret misappropriation and requiring affirmative acts to protect trade secrets.

74. Cicis is entitled to injunctive relief ordering defendants to cease misappropriating Cicis' Trade Secrets and Confidential Information. Defendants' actions are causing Cicis to suffer, and unless enjoined will continue to cause Cicis to suffer, irreparable harm for which

Cicis has no adequate remedy at law. Unless defendants are ordered to cease their misappropriation, defendants will continue to violate their contractual obligations and Cicis' Trade Secrets and Confidential Information will remain at risk of mishandling, misuse, and disclosure.

75. Under 18 U.S.C. § 1836(b)(3)(B)-(C), Cicis is also entitled to damages caused by defendants' misappropriation of its trade secrets, and because defendants' misappropriation was willful and malicious, to an award of exemplary damages in an amount equal to two times actual damages.

## COUNT II
## TRADE SECRET MISAPPROPRIATION (Against All Defendants)

76. Cicis incorporates the above paragraphs as if fully stated in this paragraph.

77. Cicis' Trade Secrets and Confidential Information constitute trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.002(6).

78. Cicis' Trade Secrets and Confidential Information generate both actual and potential economic benefits and value, are not generally known to other persons or the public at large, and are not readily ascertainable by other persons by proper means.

79. Cicis' has taken reasonable steps and has made reasonable efforts to maintain the secrecy and confidentiality of its Trade Secrets and Confidential Information, including, but not limited to, requiring its franchisees to agree to maintain the confidentiality of this information.

80. Defendants' actions constitute unlawful, willful, and malicious misappropriation of Cicis' trade secrets in violation of the TUTSA, in that defendants used and disclosed, or threatened to use and disclose, the Trade Secrets and Confidential Information in the operation of the competitive franchised restaurants, with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy.

81. Under Tex. Civ. Prac. & Rem. Code § 134A.003(a) and (c), the Court may issue injunctive relief to prevent any actual or threatened trade secret misappropriation and requiring affirmative acts to protect trade secrets.

82. Cicis is entitled to injunctive relief ordering defendants to cease misappropriating Cicis' Trade Secrets and Confidential Information. Defendants' actions are causing Cicis to suffer, and unless enjoined will continue to cause Cicis to suffer, irreparable harm for which Cicis has no adequate remedy at law. Unless defendants are ordered to cease their misappropriation, defendants will continue to violate their contractual obligations and Cicis' Trade Secrets and Confidential Information will remain at risk of mishandling, misuse, and disclosure.

83. Under Tex. Civ. Prac. & Rem. Code § 134A.004(a)-(b), Cicis is also entitled to damages caused by defendants' misappropriation of its trade secrets, and because defendants' misappropriation was willful and malicious, to an award of exemplary damages in an amount equal to two times actual damages.

## COUNT III
## BREACH OF CONTRACT (Against Perales, Mucho, and Sun Holdings)

84. Cicis incorporates the above paragraphs as if fully stated in this paragraph.

85. The Franchise Agreements and Guaranties are valid and enforceable contracts.

86. Defendants Perales, Mucho, and Sun Holding's actions constitute material breaches of the Franchise Agreements and Guaranties, including, without limitation, the confidentiality and noncompetition covenants.

87. As a direct and proximate result of defendants' breaches of the in-term noncompetition covenants, Cicis has been damaged in an amount to be proved at trial.

16

88. As a direct and proximate result of defendants' continuing breaches of the confidentiality and post-termination noncompetition covenants, Cicis has suffered and will continue to suffer actual, substantial, and irreparable harm, including but not limited to, loss of customer goodwill and loyalty, franchise system instability, lost profits, diminution in the value of its proprietary and confidential information, and loss of competitive advantage.

89. Additionally, defendants' breaches have caused and will continue to cause harm to Cicis' authorized franchisees, against whom defendants are, or will be, competing under Papa John's through Sun Holdings and Papa Texas, which causes further irreparable harm to the overall growth of the Cicis franchise network.

90. Further, Cicis has been and will be irreparably harmed by these actions, and monetary damages are an insufficient remedy in that they cannot fully and adequately compensate Cicis for the continuing damage to the value of Cicis' goodwill and reputation, its proprietary and confidential information, and its system stability, all of which are caused by defendants' continuing material breaches.

91. Absent preliminary and permanent injunctive relief enjoining their misconduct and ordering specific performance of their confidentiality and post-termination noncompetition covenants, defendants' material breaches will continue to cause Cicis irreparable harm.

92. In the alternative to paragraphs 88 to 91 above, Cicis alleges that as a direct and proximate result of defendants' breaches of the confidentiality and post-termination noncompetition covenant, Cicis has been damaged in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Cicis respectfully prays for judgment in its favor and against defendants Mucho, Sun Holdings, Papa Texas, and Perales, jointly and severally, for the following relief:

A. Preliminary and permanent injunctive relief enjoining further misappropriation of Cicis' Trade Secrets and Confidential Information;

B. Preliminary and permanent injunctive relief enjoining defendants' continuing violations of the Franchise Agreements' post-termination noncompetition covenants and confidentiality provisions, or in the alternative, damages in an amount to be proved at trial for such violations;

C. Damages for the willful misappropriation of Cicis' Trade Secrets and Confidential Information under both the DTSA, 18 U.S.C. § 1836(b)(3)(B)-(C), and TUTSA, Tex. Civ. Prac. & Rem. Code § 134A.004(a)-(b) in an amount to be proved at trial;

D. Damages for defendants' violations of the in-term noncompetition covenants and confidentiality provisions in the Franchise Agreements in an amount to be determined at trial for such violations;

E. An award of its costs and expenses, including attorneys' fees, incurred in connection with this action; and

F. Such other relief as this Court deems just and proper.

Dated: September 22, 2022                          Respectfully submitted,

/s/ *J. David Apple*
J. David Apple
APPLE & FINK, LLP
735 Plaza Blvd., Suite 200
Coppell, Texas 75019
(972) 315-1900 x223
(972) 315-1955 fax
jdapple@applefinklaw.com

-and-

/s/ *Aaron-Michael Sapp*
Aaron-Michael Sapp (*pro hac vice*)
Charles J. Hoover (*pro hac vice*)
CHENG COHEN LLC
363 West Erie Street, Suite 500
Chicago, Illinois 60654
asapp@chengcohen.com
charles.hoover@chengcohen.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was electronically filed on September 22, 2022 and notice of this filing will be sent electronically to all ECF participants registered in this case at the email addresses registered with the Court.

/s/ *Aaron-Michael Sapp*